Good morning, and may it please the Court, my name is Palmer Huvestal, and I'm an attorney from Helena, Montana. I'm appearing on behalf of Mary Ann Hungerford in this case. I'm going to argue the sole issue of whether her sentence was constitutional, and I would like to use ten minutes in my opening statement and then reserve the other ten minutes for rebuttal. The government contends, and we disagree, that Booker does not apply to this case. It does not apply to mandatory minimum sentencing. And it cites three cases, the Cardenas case, the Derrick case, the Lee case, for that proposition. Our contention is that it's the reasoning of Booker that applies to this case. As the Court knows, Booker, or rather, Apprendi and his progeny, ending with Booker, provide that, under the Sixth Amendment, any fact that enhances a penalty beyond the statutory maximum must be submitted to the jury and proved beyond a reasonable doubt. Otherwise, it's unconstitutional. The thrust and the primary reason, in fact, the sole reason that they held that that was unconstitutional, any sentencing scheme that did not do that, was because it was binding and mandatory on the Court. And that reasoning applies to mandatory minimum sentences. That reasoning applies to this case, and that's why here we are asking the Court to vacate her sentence,  But if there's a mandatory minimum, then, by definition, a jury finding of guilt on a particular claim, or charge, rather, does constitute a jury finding that supports the mandatory minimum. I'm not really sure I understand... Well, we're not arguing... ...beyond that is required. I know you argue there isn't sufficient evidence, but if there is sufficient evidence... We're arguing due process, Your Honor. In other words, Booker, Apprendi, Ring, Blakely, they all abide under the Sixth Amendment. We're arguing this under the Fifth Amendment. But what specifically are you arguing had to be done that wasn't done? We are arguing that, well, from a factual point of view, Marion Hungerford was a 52-year-old woman... No, no. We know the facts. I don't understand the argument either. What is the due process argument? I understand if you're arguing that the sentence is unconstitutional under the Eighth Amendment. That I understand. But what is it that your Booker argument is about a mandatory minimum? Well, the Fifth Amendment provides that no person shall be deprived of life, liberty, or property without due process of law. Clearly, we're dealing with a liberty interest here. Yes. The prosecutor's charging decision as to Marion Hungerford was abusive. It was a charging decision that was applied differently to two people who committed the identical crime. Well, that sounds like an equal protection argument, not a due process argument. Well, the equal protection component of the Fifth Amendment due process clause. Okay. So I guess what I was originally understanding you to be saying isn't what you're saying. So if the statute says if you rob a bank, you get a minimum of ten years. It doesn't say that, but just as an example. And the jury says you rob the bank, then they can impose the ten years, and that's not a due process violation. So that's not your argument. Your argument is that she was somehow entitled to the same treatment as the co-criminal. Our argument is that she was entitled to due process. Under the mandatory minimum sentencing scheme, Congress clearly did not consider or provide provisions for somebody who was situated like Marion Hungerford, somebody who never touched a firearm, somebody who was convicted under an aiding and abetting theory, under a Pinkerton liability theory, who never performed physically any of these robberies, who, for the vast majority of them, wasn't even present. Congress never provided provisions for that when they enacted it. I guess I still don't understand why that's a due process argument, though. Because nobody can do anything about it. The sentencing court can't do anything about it. It has to follow the law. It has to follow the mandatory minimum. So the argument is that Congress did a stupid thing. That's what it sounds like. Well, something that it did not foresee would happen in this case. I mean, we have a 159-year sentence that was imposed against a woman who, again, was convicted solely under an aiding and abetting theory. The guy who actually did use the gun and who did perform the robberies got a 25-year sentence. Ultimately, or something like that, ultimately he got a Rule 35 motion, which decreased his sentence down to 20 years. That is abusive in our estimation. It takes away all sentencing discretion. It takes away all judgment in this case from the court, and it leaves it in the hands of the prosecutor. And there is no process that is afforded to the defendant to do anything about it. And it was solely because she exercised her right to a jury trial. She exercised her right to a jury trial because she was suffering from a mental illness, a borderline personality disorder, which the evidence at the sentencing hearing was can be more severe than schizophrenia. And she decided to go to trial, and she was convicted, whereas the government's cooperating witness entered into a plea agreement, cooperated with the government. I don't really understand. The question is what constitutional theories would support your argument. As I said, I can understand the Eighth Amendment argument. This is a totally unacceptable disproportionate sentence for the offense, given all the circumstances. Right or wrong, that's a – I can follow up the constitutional argument. There are two other possible arguments that I can glean from what you've been saying. One is that somehow Congress has given prosecutors too much power, which is not a novel argument. I mean, there are lots of people who have asserted that. Whether that's a violation of the Constitution to give prosecutors that much power is another question. I guess you're also arguing that when sentences are so much greater because you go to trial, that that's, I guess, a Fifth Amendment violation. And also, that's part of what you've mentioned, you're making an equal protection argument, that you, I guess, can't treat the actual criminal so much differently, or you can't treat the hater and abettor or conspirator, you've never touched a gun, so much more harshly than the actual perpetrator, that somehow that's either equal protection or due process. Are those the arguments you're making? Well, there's a separation of powers component in there as well. 3551 is – 18 U.S.C. 3551 essentially says that except as otherwise provided, a defendant shall be sentenced according to the factors delineated in 3553. But that doesn't have anything to do with mandatory acceptance. Pardon me? That doesn't have to do with a mandatory sentence. Well, I think it does because the effect that the except as otherwise provided language brings the charging decision into the mandatory sentence theory of the prosecutor. In other words, a prosecutor, for sentencing purposes, can charge an offense that has a mandatory minimum sentence under 3551, under the except as otherwise provided language of 3551, and thereby completely escape or not have to utilize or not allow the court to consider the 3553 factors. Are you saying the prosecutor can never file a charge with a mandatory minimum? No, I'm not saying that at all. But when it leads to absurdly – But when a prosecutor does file a charge that has a mandatory sentence, then there's nothing the judge can do about those other sentencing factors. He must give a mandatory minimum. That's correct. That's correct. But when it leads to the results that we have in this case, it's unconstitutional. It violates due process, in our view. But wouldn't that – in your view, that would – the sentence would violate due process, whether it was a result of a mandatory minimum or any other sentencing? Well, under Booker, sentences have to be reasonable. And the sentence that was imposed in this case was clearly unreasonable. I can't imagine that anybody would think that under these facts and these circumstances, a 159-year sentence is a reasonable sentence. And I think that it is a short step. Somebody seems to have thought that. Congress? I don't know what he – I mean, I don't mean to be facetious, but was it Congress? Did they take into consideration facts as in this circumstance where a woman, you know, doesn't participate and she gets – Well, the jury found that she did. I mean, in some sense, you're sort of arguing – you're back-arguing the facts as if this were a jury trial. There's not even an appeal from part of this series of robberies. And it's clear that she was quite willing to accept the proceeds of each of these robberies. And it was an ongoing enterprise to rob a bunch of different establishments to get money to pay for life's necessities. And I guess I have difficulty understanding why it would be wholly irrational for Congress to say, well, we really are serious about not wanting people to make their living by repeatedly robbing other people. I mean, where is the so far out of line that it has to be unconstitutional? Because under the facts of this case, her culpability lied solely by virtue of Pinkerton and the Pinkerton theory. Right. That she's part of the conspiracy. She says, fine, honey, come back at the end of the day with our robbery proceeds, and I'll go get the groceries. Right. But then the prosecution, and I think therein lies the problem, gives the actual perpetrator benefits under Rule 35 that weren't even possible to this defendant. And the court, the district court, when sentencing that defendant, was able to consider the 3553 factors precluding, and Marian Hungerford was not able to consider the 3553 factors. I mean, the district court was not able to consider the 3553 factors when sentencing Marian Hungerford. And I think that's problematic. Congress did not provide for that. They didn't see this situation. Well, they must have known that it is not uncommon for one criminal in a group to seek and receive benefits that other members of the group don't seek or don't receive. That's kind of a regular, if unfortunate to some, feature of group crimes. They could have foreseen that, and I think that the language of 3553, that a sentence shall not be greater than necessary, that is sufficient, but not be greater than necessary, is the language that is the saving grace of that. And a district judge is the only judge that can determine, make the determination of whether the sentence is sufficient, but not greater than necessary. But when a prosecutor makes the charging decision, as he did in this case, a judge, nobody can exercise discretion, nobody can exercise judgment, as to whether the facts of the case are reasonable and merit a 159-year sentence. I have six minutes left. I'll reserve that. Thank you, counsel. May it please the court, counsel. Good morning. My name is Jim Secor. I'm an assistant U.S. attorney. I was trial counsel in this particular matter. Another assistant was on the brief. May it please the court. First of all, in the first issue that counsel raises regarding the aiding and abetting Pinkerton theory, I would like to discuss the facts very briefly regarding the role and the offense by Marian Hungerford. As set forth in our brief, she was a seminal person. She took police psychology courses. She thought that she could outsmart the cops. Her co-conspirator, Mr. Canfield, decided to rob these places. The jury found her not guilty of the first two Hobbs Act robberies, in which there was no video of her entering the store, although he had the testimony of Canfield. This thing was charged, this indictment was charged, as to Canfield and as to Hungerford, and it was during this process in which Canfield himself pled guilty and agreed to cooperate. You can see by the results of the jury verdict that whatever was in the jury's mind, they found her not guilty in the first two Hobbs Act robberies. But on the third count of the Alpine Village, and it was the testimony of Mr. Canfield, that Marian Hungerford, because he described to her the rush that he received from putting a gun in someone's face, that she wanted to become more involved, more actively involved in the robberies. So what do we have? The third charged robbery, we have a video of her walking into the Alpine Casino, described by her co-defendant, saying it had signals arranged as to how many people were in there, how many pills there were. She would leave. A second later, he would come in with a gun. They would split the proceeds. They would drive together on that particular one. There's three robberies in a row. They then do the Jackpot Casino, and the Jackpot Casino she has seen. This was in May of 2002. The detectives from the Billings Police Department looked at the video in the Jackpot, and they said, you know, that woman, and they see her make a phone call. They make a phone dump. They get her phone records. They actually make a call to Marion Hungerford because they want to discuss it with her, this call that she made. And she consciously, with her co-defendant, said, the cops may be on to us in essence. So what happens is, when you do the next robberies, I'm going to go set up an alibi. I'm going to still receive the proceeds, but you go do it. So when you do this one, we're going to throw the cops off, basically. So the next robbery that comes in, what happens? She goes to her landlord's office. What are you trying to argue here? Is this a reasonable sentence for her? Is that the point of it? No, I think the original facts regarding his first suggestion, aiding and abetting the first instance, Pinkerton, as the Court believes, I believe that Pinkerton does it, but aiding and abetting also does it, Your Honor, that throughout this entire situation, she was cognizant of it. She tried to throw off the police. Counsel argues that under the aiding and abetting theory, she should have not been found guilty on these counts in which he, the co-conspirator, testified. I went out and robbed the place. She directed me. So you're arguing now whether the convictions were valid. Yes, under the sufficiency of the – yes, Your Honor. Okay. Apologize. So there are two robberies in which he basically – he, Canfield, basically says, she didn't know exactly which place I was going to rob. She told me to go out and rob whatever. She directed me to go out under aiding and abetting, direct, command, counsel, procure, each time he brought the proceeds back. And one of the interesting things that occurred is after Marion Hungerford – after the Magoo robbery, Marion Hungerford met with Detective Schinke about the phone calls, and she set up a story with her young daughter that if the cops ask you, I was calling you. Well, in essence, after Canfield pled guilty, we found out she was calling Canfield, saying the coast is clear. Come in. She set this entire enterprise in coordination so that she's going to keep herself out of it, not be in the videos any longer. But what happens? Just by pure happenstance, on July 10th, the detective that had previously talked to her and looked at her phone calls thought that she was in the clear. It's at the Billings Clinic. He's getting an allergy shot. She's doing something else. But she's with Canfield. The detective describes that she turned quite like a ghost because all of a sudden, Mr. Canfield, the actual robber, and the detective saw him, had a distinctive walk, had a pot belly, had long hair, matched the robber, went back on to them. Marion Hungerford consciously changed the scheme now to doing casino robberies that they said, we're in trouble. What we're going to do is we're going to go rob a place in Butte, Montana. We're going to rob a place in Missoula, Montana, and act like this string of robberies is leaving the state to cover our tracks. And that's what they did. They left, and they were arrested on July 27th. The robbery didn't go right. They drove around casing the place. She went back to the hotel. He went and robbed the place. Not the one that they originally looked at because someone was standing outside. He went to another location. Went back to the hotel with the gun. They tore up the checks. She put the money under the mattress, and the cops arrested her. Foiled their plan. All of those robberies were charged. In regard to that, aiding and abetting is clearly there. In addition, the Pinkerton theory does not even challenge Count 1, which is the Hobbs Act in which the Pinkerton theory expounds thereon. Getting to the sentencing factors, Your Honor, if I may. All of the cases that I've looked at, it's a difficult thing to charge a case like this, Your Honor. Counsel suggested it's the government. It's the prosecutor. Going in, we did not know what convictions were going to be had, how strong the proof was. Certainly, when Mr. Canfield pled guilty, it became much stronger. But each one of the counts in which they allege are unconstitutional had nothing to do with the prosecution.  The legislatively mandated sentencing was established by His Honor, Judge Siebel. And within the realm of his suggesting age and mental issues, he was able to allow in the Hobbs Act and sentence for blowing the guideline for that. Your Honor, we believe all of the cases established well that there are no Eighth Amendment violations. The sentence, although harsh, as the United States Supreme Court has said in Ewing, you look at each crime. You don't look behind the factors. When we have nine or ten armed robberies with a gun on each occasion, and she and he making a conscious decision when they got $50 in an Amway pride robbery that they only got 50 bucks, we're not going to do convenience stores anymore. We're going to go get casinos because they have more money. This is a crime spree. They're individual. I don't think you really seriously believe this was a reasonable punishment because I think you probably think the reasonable punishment is what the man with the gun got. He got 34 years. Isn't that reasonable for this series of crimes you're talking about? Just like this Court said in Allen, the getaway driver who never touched the gun either got the same punishment under 924C. No, the same punishment is one thing. But, I mean, it's hard. It doesn't mean it's unconstitutional. I mean, when you're saying, making an argument, well, this is a very reasonable punishment. Look at all the terrible things this woman did. But the man who did even more terrible things than it would have done, got 34 years. Your Honor. She got 155. Doesn't that seem to you something a little odd about that? It's not odd. Both of them were treated identically. Counsel even admits in his brief that plea agreements were presented to her, which she denied, which she refused. They were both treated equally. I'm not asking about the constitutionality. As I said, it may well be lawful, constitutional. But when you're arguing about this being such a reasonable sentence, you know, the appropriate punishment for the woman who did these terrible things, then the man must have been treated, he didn't get what he really deserved. Because he did all these terrible things. I mean, he did them with a gun. And he didn't, he got a fifth of the sentence. So somewhere, somebody's not getting what they deserve, it would seem. The defendant herself chose to go to trial. Chose not to. No, no, I wasn't asking about the cause or whose fault it was. I understand. All right. Excellent. Never mind. I don't wish to argue with the Court, but again, let me point out to the Court, we knew early on in this when counsel brings up the equal protection, that was not even raised in the opening brief. But regarding that, we knew early on, the United States asked to have her examined. There was actually a hearing in which defense counsel objected, and Judge Siebel said, no, she shouldn't be objected, she should not be examined. It was only later on in her second set of counsel in which she obtained an attorney, and he actually filed a motion which we joined in to have her examined. Give her every potential in this particular case. You would agree 34 years would have been a fair sentence for her if she had been willing to plead? Well, we offered that plea agreement to her. Right. We offered that plea. So 34 years is a fair, appropriate sentence that she offered to plead, and 155 is a fair, appropriate sentence because she asked to go to trial. It was actually 32 years. Mr. Canfield. I just want, because it was seven years for brandishing for the first count, and 25 on top for Canfield, what it was. And, Your Honor, if it pleases the Court, during sentencing. I am willing to accept a lot of your arguments and maybe even your legal conclusions. I just have a little difficulty when you say, like, I want to tell you how terrible this woman is and all the horrible things she did. And this is really the right sentence for somebody who did all those things. It's a little hard for me to accept that when I know that the other person at 34 years used a gun, and that seems to be just as reasonable a sentence to him. It's an odd concept to me of reasonable. Probably. It may be constitutional. It may be lawful. It may be what Congress intended. It may be her fault for not pleading all those things. But the additional factor, Your Honor, when you have a string of these, 10 or 11 of them, she's involved. She knows the gun's being used. She's using the profits, including going to a family reunion. And so did he. Only he used the gun. With her permission. And from the very beginning, when they decided to do these robberies, she had some walking issues. So they decided he was the one that was going to go in. She was going to do the casing. Just out of curiosity, only curiosity, what was your argument for a sentence for her? There wasn't much, Your Honor. What did you argue for? It was minimum mandatory. It was just applied. Is that what you argued for, the mandatory minimum? Yes. And, again, we didn't go over the ceiling. It was all minimum mandatory. It was applicable. And the only was the guideline range of 57 to 71 months for the Hobbs Act. The judge gave her, Your Honor, Judge Siebert gave her 57. Thank you once again for allowing me to argue in this magnificent courtroom. Thank you. Any other questions, Your Honor? No, thank you very much. Again, the due process argument is based upon Booker. Booker said that because of the mandatory nature of the sentencing guidelines, they were unconstitutional. The mandatory nature of the mandatory minimum sentencing, in our view, violates due process. The question is posed, what process did Marion Hungerford give when it came to sentencing? The statute said mandatory minimum consecutive sentences. That's what the district judge had to impose by law. And she got no process. She was never able to argue any mitigating factors, the factors of 3553A. And we think that that's unconstitutional. Case just argued will be submitted. The court will stand at recess for the day.
judges: Reinhardt, Graber, Lew